UNITED STATES of America, Appellee,

v.

Luis QUINTERO, Defendant–Appellant.

No. 1610, Docket 90–1658.

United States Court of Appeals,
Second Circuit.

Submitted June 12, 1991.

Decided June 28, 1991.

Vivian Shevitz, New York City, submitted a brief for defendant-appellant.

Douglas T. Burns, Asst. U.S. Atty., Garden City, N.Y., submitted a brief for appellee.

Before FEINBERG, NEWMAN, and WINTER, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

This appeal in a sentencing guidelines case requires a brief opinion only to make clear certain aspects of the relevant conduct guideline, U.S.S.G. § 1B1.3, that should be fairly evident from our prior opinions, particularly the relationship between relevant conduct determinations and plea bargaining. Luis Quintero appeals from the October 31, 1990, judgment of the District Court for the Eastern District of New York (Jacob Mishler, Judge) convicting him, on his plea of guilty, of one count of distributing in excess of five grams of crack cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(iii) (1988). He was sentenced to imprisonment of 188 months, supervised release of four years, and a $50 assessment. Quintero's principal complaint is that use of the relevant conduct guideline was inconsistent with the dismissal of counts obtained in connection with his plea bargain. We affirm.

### Facts

Between May 16 and August 22, 1989, Quintero met with undercover detectives to sell them various quantities of crack cocaine. He sold 28 grams on May 16, one-eighth of a kilogram on May 29, and one-fourth of a kilogram on June 9. On June 14, Quintero met with one of the detectives to discuss a sale of one kilogram. During the discussion Quintero warned the detective that "if you are a cop I'll kill you." Later, while seated in Quintero's car, the detective asked if Quintero had a gun. Quintero said that he did and reached into an open briefcase to retrieve it. As he did so, he was startled by a person walking

alongside the car. Quintero drove away quickly, causing the briefcase to fall to the floor and exposing to the detective's view the butt, handle, and clip of a black gun. On August 22, Quintero met with the detective and told him that he could not obtain the one kilogram they had discussed but that he had one-half a kilo. At that point Quintero was arrested, and 492 grams of crack was seized from him.

Quintero was charged in a four-count indictment with the sales on May 16, May 29, and June 9 and the possession on August 22. Pursuant to a plea bargain, Quintero pled guilty to Count Four, which charged the May 16 distribution of 28 grams of crack, with the understanding that the remaining counts would be dismissed at sentencing. In accepting the plea, Judge Mishler specifically advised Quintero that the total amount of crack he distributed would be taken into consideration at sentencing. At a subsequent proceeding, Quintero unsuccessfully sought to withdraw his plea.

In connection with the sentencing, the District Court accepted the calculation in the presentence report that the four transactions in which Quintero was involved totaled 886 grams, concluded that this quantity was "relevant conduct," see U.S.S.G. § 1B1.3(a)(2), and calculated a base offense level of 36. The Court then held a hearing to resolve the factually disputed issue of whether Quintero possessed a gun during commission of the crime, an offense characteristic for drug offenses, which results in a two-level enhancement. See U.S.S.G. § 2D1.1(b)(1). The Court found that Quintero had possessed a gun in connection with his dealings with the undercover detective on June 14. Then, apparently under the impression that the gun enhancement is available only for possession in connection with an offense that is the subject of a count of an indictment, the Court found that the possession occurred "during the commission of the crime charged in [C]ount [T]wo," the June 9 transaction. Judge Mishler linked the June 14 possession to the June 9 transaction by noting that Count Two alleged a transaction "on or about" June 9, providing sufficient latitude to consider the second sale to have occurred on June 14, when the gun was possessed.

After adding a two-level enhancement for the gun possession and subtracting two levels for acceptance of responsibility, the District Court sentenced Quintero to 188 months of imprisonment, the bottom of the applicable guideline range of 188 to 235 months.

## Discussion

■ *Relevant conduct and plea bargaining.* Quintero contends that the District Court erred in considering as relevant conduct the quantities of narcotics involved in the transactions that were the subjects of the three counts dismissed as a result of his plea bargain. He asserts a practical objection and an alleged conflict with the Sentencing Commission's policy statement concerning acceptance of a plea bargain, U.S.S.G. § 6B1.2(a).

The practical argument is that the number of plea agreements will diminish if conduct charged in dismissed counts may be considered "relevant conduct" under section 1B1.3 for purposes of determining the appropriate sentencing guideline for the count of conviction. This effect, Quintero contends, will be especially pronounced if drug quantities involved in dismissed counts can be aggregated as conduct relevant to the count of conviction, a result required by section 1B1.3(a)(2) for activity that is part of a common scheme or plan. Even if adherence to the relevant conduct guideline will reduce the number of plea bargains, a matter on which no firm data have yet emerged, that result affords no reason for disregarding the guideline. Such a result, if demonstrated, is a matter for the Commission to consider in its periodic modifications of the guidelines, and, ultimately for the Congress to assess.

Quintero contends that application of the relevant conduct guideline conflicts with the Commission's policy statement on plea bargaining, which provides that a court may accept an agreement that contemplates dismissal of charges "if the court determines, for reasons stated on the

record, that the remaining charges adequately reflect the seriousness of the actual offense behavior and that accepting the agreement will not undermine the statutory purposes of sentencing." U.S.S.G. § 6B1.2(a). Quintero's point is that this statement carries the negative implication that a judge who has concluded that the remaining charges are adequate may not sentence on the basis of the dismissed charges. We disagree.

In several decisions, we have upheld the authority of sentencing judges to apply the relevant conduct guideline to activity charged in dismissed counts. *See United States v. Bedoya*, 878 F.2d 73, 75–76 (2d Cir.1989); *United States v. Fernandez*, 877 F.2d 1138, 1142–44 (2d Cir.1989); *United States v. Guerrero*, 863 F.2d 245, 250 (2d Cir.1988). Though these decisions have not explicitly reckoned with the plea bargaining policy statement, their import is unmistakable. Quintero's attempt to posit a conflict between the relevant conduct guideline and the plea bargaining policy statement is unavailing and does not call into question the correctness of these decisions. The relevant conduct guideline and the plea bargaining policy statement are readily reconcilable, once it is realized that the sentencing judge's assessment of the adequacy of the remaining counts is to be determined in light of the sentence authorized for those counts by all of the guidelines, including the relevant conduct guideline.

Long prior to the sentencing guidelines it was settled that a sentence on a count of conviction could be based on conduct charged in dismissed counts, *see United States v. Doyle*, 348 F.2d 715, 721 (2d Cir.), *cert. denied*, 382 U.S. 843, 86 S.Ct. 89, 15 L.Ed.2d 84 (1965); *see also United States v. Ortiz*, 742 F.2d 712, 714 n. 3 (2d Cir.), *cert. denied*, 469 U.S. 1075, 105 S.Ct. 573, 83 L.Ed.2d 513 (1984); *United States v. Hansen*, 701 F.2d 1078, 1081 (2d Cir.1983), and even on counts resulting in an acquittal, *e.g., United States v. Sweig*, 454 F.2d 181, 183–84 (2d Cir.1972). Nothing in the Commission's plea bargaining policy statement indicates that the Commission intended to alter that pre-guidelines practice. It may well be that the precision introduced

by the guideline system, calibrating the extent of punishment according to the extent of wrongdoing—in this instance the quantity of drugs distributed—has brought into sharp focus the significance of basing sentences on conduct charged in dismissed counts. If so, that simply illustrates that, for all the criticism the guidelines have attracted, one of their virtues is the illumination of practices and policies that were applicable in the pre-guidelines era, but that received less attention when sentences were only a generalized aggregation of various factors, many of which were frequently unarticulated.

■ *Gun possession adjustment.* In challenging the two-level upward adjustment under section 2D1.1(b)(1) for possession of a gun during commission of the offense, Quintero contends that the District Court erred because the gun was possessed on June 14 whereas the offense of conviction occurred on May 16. In his view, enhancement for possession of the gun is precluded by decisions such as *United States v. Rodriguez–Nuez*, 919 F.2d 461, 466–67 (7th Cir.1990), which have found the relationship between a weapon and an offense too attentuated to support application of section 2D1.1(b)(1).

Quintero's argument fails to reckon with the relevant conduct guideline. That guideline expressly provides that relevant conduct is pertinent to determining not only the base offense level but also "specific offense characteristics." U.S.S.G. § 1B1.3(a)(ii). *See United States v. Pellegrini*, 929 F.2d 55, 56 (2d Cir.1991). Since, with respect to drug offenses, "all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction" are relevant conduct, *id.* § 1B1.3(a)(2), the gun possessed on June 14 may result in a weapons adjustment if the gun was possessed in connection with drug activity and if the drug activity on June 14 was part of the same course of conduct or common scheme as the May 16 sale. Plainly both conditions are met. The June 14 encounter was one of a series of meetings in which Quintero either arranged to sell or actually sold crack to undercover detectives following introductions by the same informant, and

the weapon was possessed as a security measure.

Our only disagreement with Judge Mishler concerns his use of the "on or about" phrase in the count respecting the June 9 transaction to cover the June 14 meeting at which the gun was seen. Though "on or about" permits some latitude with respect to differences between the date of an offense as charged and the evidence of its occurrence, we doubt that the phrase permits two events shown to have occurred on different dates to be viewed as if they had occurred on the same date. However, invocation of the "on or about" phrase was of no consequence in this case. There was no requirement, as Judge Mishler appears to have thought, that the gun possession had to be linked to a transaction specified in one of the dismissed counts. The weapons adjustment was properly applied simply because the weapon was possessed in connection with drug activity that was part of the same course of conduct or common scheme as the offense of conviction.

Quintero's remaining contentions are without merit and require no discussion.

The judgment of the District Court is affirmed.