11-3992-cr (L)
*United States v. Devine*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 16th day of November, two thousand twelve.

PRESENT:

> JOHN M. WALKER, JR.,
> DEBRA ANN LIVINGSTON,
> CHRISTOPHER F. DRONEY,
>
> *Circuit Judges.*

———————————————————————————

UNITED STATES OF AMERICA,

*Appellee*,

-v.-                                                          Nos.    11-3992-cr (Lead)
                                                                      11-4224-cr (Con)

MARTINE DEVINE, AKA PARTY, AKA P

*Defendant-Appellant*.

———————————————————————————

> PAUL F. DWYER, Albany, New York *for Defendant-Appellant*.
>
> ROBERT A. SHARPE, ELIZABETH S. RIKER, ASSISTANT UNITED STATES ATTORNEYS, OF COUNSEL, *for* RICHARD S. HARTUNIAN, UNITED STATES ATTORNEY FOR THE NORTHERN DISTRICT OF NEW YORK, Syracuse, New York *for Appellee*.

1

Appeal from a judgment of the United States District Court for the Northern District of New York (Glenn T. Suddaby, *Judge*).

**UPON DUE CONSIDERATION**, it is hereby **ORDERED, ADJUDGED**, and **DECREED** that the judgment of the District Court entered September 26, 2011 is **AFFIRMED**.

Martin Devine appeals from a judgment of conviction entered following his guilty plea and sentencing him to 120 months' imprisonment for one count of distribution and possession with intent to distribute cocaine, *see* 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and one count of unlawful possession of firearms by a previously convicted felon, *see* 18 U.S.C. §§ 922(g)(1), 924(a)(2). Devine first challenges the district court's application of a two-level sentencing enhancement pursuant to § 2D1.1(b)(1) of the United States Sentencing Guidelines for possession of a dangerous weapon during the offense of drug trafficking. Second, he contends that the district court erred in calculating the applicable Guidelines range by considering evidence not proven true beyond a reasonable doubt. "We review a district court's application of the Guidelines *de novo*, while factual determinations underlying a district court's Guidelines calculation are reviewed for clear error." *United States v. Watkins*, 667 F.3d 254, 261 (2d. Cir. 2012). We assume the parties' familiarity with the underlying facts, procedural history of the case, and issues on appeal, which we reference only as necessary to explain our decision to affirm.

\* \* \*

1. Sentencing Enhancement

Devine contends that the district court erred in applying a two-level enhancement for the possession of firearms during the offense of drug trafficking. *See* U.S.S.G. § 2D1.1(b)(1) ("If a dangerous weapon (including a firearm) was possessed, increase by 2 levels."). Specifically, he

2

argues that no evidence links the three automatic pistols found in his apartment, and on which this enhancement was based, to his drug offense on the theory that he pled guilty to two specific cocaine sales to an undercover agent that took place away from his home. We are not persuaded.

Section 2D1.1(b)(1) of the Guidelines provides for a two-level enhancement in calculating the offense level for the unlawful manufacturing, importing, exporting, trafficking, or possession of drugs "[i]f a dangerous weapon (including a firearm) was possessed." The accompanying note explains that the "enhancement for weapon possession in subsection (b)(1) reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet." U.S.S.G. § 2D1.1, cmt. (n.3). We have interpreted the enhancement to require a two-step burden-shifting analysis: "[O]nce the government has established that a weapon's presence was reasonably foreseeable to the defendant during conduct (*i.e.*, the storage and cutting of drugs) relevant to the offense (*i.e.*, distribution of drugs) at issue, the enhancement will apply, unless the defendant demonstrates that it is clearly improbable that the weapon was connected with the drug offense." *United States v. Smith*, 215 F.3d 237, 241 (2d Cir. 2000) (per curiam) (internal citations omitted).

The enhancement applies, moreover, if the defendant possessed the firearms during conduct relevant to the offense, not just during the specific act which precipitated his arrest. *See* U.S.S.G § 1B1.3 (noting that "[u]nless otherwise specified, . . . specific characteristics . . . shall be determined on the basis of . . . all [a]cts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of

3

attempting to avoid detection or responsibility for that offense"). And, because drug offenses require grouping of multiple counts under U.S.S.G. § 3D1.2(d), the relevant conduct for the firearm enhancement includes "all acts and omissions described in subdivision[] 1(A) . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction." *Id.*; *see also United States v. Pellegrini*, 929 F.2d 55, 56 (2d Cir. 1991) (per curiam) ("With respect to offenses involving 'aggregate harms,' such as drug offenses, relevant conduct consists of all 'acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction.'" (quoting U.S.S.G. § 1B1.3(a)(2))).

Here, the government carried its burden of demonstrating that Devine possessed the firearms during the course of his drug dealing, and Devine has not established that it was "clearly improbable" that the weapons were connected to the drug dealing. Thus, the district court did not err in applying the two-level enhancement.

First, the evidence establishes that Devine constructively possessed the guns. *See United States v. Hertular*, 562 F.3d 433, 447 (2d Cir. 2009) (noting enhancement applies where defendant constructively possesses dangerous weapon (citing *United States v. Herrera*, 446 F.3d 283, 287 (2d Cir. 2006)). Not only did he admit ownership, but the guns were kept next to his bed in a box with his name and address on them. Second, sufficient evidence supports the district court's conclusion that the weapons were present during conduct relevant to Devine's drug dealing. Specifically, police discovered the weapons in Devine's apartment, where police also found a digital scale with cocaine residue. Devine argues that the guns were not connected to the cocaine sales to the undercover officer to which he pled guilty, which did not occur at his home. The storing and cutting of drugs, however, is conduct relevant to drug distribution, and the district court did not err in concluding that weighing and cutting cocaine at home comprised part of Devine's drug dealing, even if not directly

4

linked to the cocaine sold to the undercover agent. *See Smith*, 215 F.3d at 240-41 (holding that the government had established that the presence of weapons was reasonably foreseeable to the defendant during his drug dealing where officers discovered handguns in residence where defendant kept cocaine base and drug paraphernalia); *see also United States v. Sweet*, 25 F.3d 160, 163 (2d Cir. 1994) (holding enhancement applicable where the record supported conclusion that drugs were stored and cut in the same location as the guns, even though a search of the location yielded no drugs).

Second, the government having met its initial burden, Devine offered no evidence to indicate that it was "clearly improbable" that the weapons were connected to the drug dealing. Given the proximity of the guns to the scale with cocaine residue, both found in Devine's home, as well as abundant case law highlighting the link between guns and drug-dealing, *see*, *e.g.*, *United States v. Wiener*, 534 F.2d 15, 18 (2d Cir. 1976), the district court did not err in declining to credit Devine's assertion that he purchased the guns for recreational purposes. We conclude that the evidence before the district court fully supported its conclusion that Devine possessed the firearms during conduct relevant to his offense and that the two-level enhancement set out in U.S.S.G. § 2D1.1(b)(1) properly applied.

2. Drug Quantity Determination

Devine also challenges the district court's finding, by a preponderance of the evidence, that he possessed 107 grams of cocaine base in addition to the 56 grams of cocaine he sold to the undercover agent. He argues that this finding violated the Sixth Amendment because his plea agreement only references the 56 grams he sold and his possession of the 107 grams of cocaine base was not otherwise proven beyond a reasonable doubt.

At the start, Devine's plea agreement specifically provides as follows:

> The Defendant understands that the sentencing Court may make factual findings with respect to any and all sentencing factors and issues, including those referenced in the United States Sentencing Guidelines, whether or not such factors or issues have been admitted by the Defendant or stipulated by the parties. In making those findings by a preponderance of the evidence, the Court may consider any reliable evidence, including hearsay. The Defendant agrees that his sentence may be determined based upon such judicial fact-finding.

The language of this agreement would appear to forestall Devine's present claim. Even if this were not the case, moreover, Devine's argument is premised on a misunderstanding of *United States v. Booker*, 543 U.S. 220 (2005), on which he principally relies. As we have said, "Judicial authority to find facts relevant to sentencing by a preponderance of the evidence survives *Booker*." *United States v. Brown*, 514 F.3d 256, 269 (2d Cir. 2008) (quoting *United States v. Garcia*, 413 F.3d 201, 220 n.15 (2d Cir. 2005)). As such, "district courts remain statutorily obliged to calculate Guidelines ranges in the same manner as before *Booker* and to find facts relevant to sentencing by a preponderance of the evidence." *United States v. Cuevas*, 496 F.3d 256, 265 (2d Cir. 2007) (quoting *United States v. Vaughn*, 430 F.3d 518, 526-27 (2d Cir. 2005)).

Here, two intercepted telephone conversations indicated that on May 16, 2010, Devine possessed and offered to sell seven grams of crack cocaine, and that on June 14, 2010, he was cooking 100 grams of crack cocaine when the bowl broke, flushing approximately two thirds of the cocaine down the drain. The district court relied on reliable and unrefuted evidence to conclude that Devine's relevant conduct included possessing 107 grams of cocaine base in addition to the 56 grams of cocaine sold to the undercover agent and calculated the Guidelines range accordingly. We find no error in its determination.

6

For the foregoing reasons, the judgment of the District Court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk